Filed 3/3/15  Benthin v. Emeritus Corp. CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| GENEVA BENTHIN et al.,<br><br>  Plaintiffs and Respondents,<br><br>v.<br><br>EMERITUS CORPORATION et al.,<br><br>  Defendants and Appellants. | A141385<br><br>(Solano County<br>Super. Ct. No. FCS038463) |

Emeritus Corporation and Emeritus Westwind Gardens appeal from an order denying their renewed motion to compel arbitration.  Appellants contend the trial court abused its discretion because (1) appellants had acted with reasonable diligence in obtaining a valid copy of the power of attorney that was needed to establish a binding arbitration agreement, (2) equitable estoppel applied, and (3) public policy favors arbitration.  We conclude the order from which they appeal is a nonappealable order, treat the appeal as a writ petition, and deny the petition as meritless.

I.  FACTS AND PROCEDURAL HISTORY

For about two years before her death, Geneva Benthin (Benthin) lived at Emeritus at Westwind Gardens, a residential care facility for the elderly that is managed and operated by Emeritus Corporation.  We refer to Emeritus at Westwind Gardens and Emeritus Corporation collectively as "Emeritus."

1

As part of the paperwork for Benthin's admission to Emeritus in August 2008, Benthin's daughter, Joyce Root (Root), signed a Resident Agreement and checked two boxes on the agreement indicating that Root was the responsible party and had power of attorney to act on Benthin's behalf.

On that same day, Root signed an "Agreement to Resolve Disputes by Binding Arbitration" (Arbitration Agreement) as Benthin's "authorized representative." As relevant here, the Arbitration Agreement required arbitration of claims arising out of Emeritus's provision of services or its acts or omissions that cause injury.

Root also presented Emeritus with two powers of attorney: a "Uniform Statutory Form Power of Attorney" and a "California Advance Health Care Directive Including Power of Attorney for Health Care." The documents were purportedly signed by Benthin, but Benthin's signature was neither notarized nor acknowledged by witnesses.

A.  Respondents' Lawsuit

Around 5:50 a.m. on September 7, 2010, Benthin fell on Emeritus's premises and suffered terminal injuries. Benthin's successors-in-interest—respondents Root, Donna Morgan, and Elnora Good—sued Emeritus for damages, asserting causes of action for elder abuse, fraud, wrongful death, and violation of Health and Safety Code section 123110.

B.  Emeritus's Petition to Compel Arbitration

In October 2011, Emeritus filed a petition to compel arbitration of respondents' claims, setting a hearing date for four months later in February 2012. Emeritus based its petition on the Resident Agreement, the Arbitration Agreement, and the power of attorney forms in its possession.

Six days after Emeritus filed its petition, Emeritus and respondents stipulated to conduct discovery. Respondents agreed that Emeritus's participation in discovery would not waive its right to seek arbitration.

Respondents opposed Emeritus's petition, arguing among other things that Emeritus had failed to meet its burden of establishing a valid agreement on Benthin's

2

behalf to arbitrate, because the powers of attorney forms attached to the petition did not include a notarization or witness acknowledgment, and therefore did not establish valid powers of attorney.

In reply, Emeritus countered that the Arbitration Agreement was valid and that Root in any event had ostensible authority to sign the agreement based on her own statements and the power of attorney forms.

C. Denial of Petition to Compel Arbitration

At the hearing on Emeritus's petition, Emeritus asserted its belief that there was a valid power of attorney somewhere in existence—that is, one that was witnessed or notarized—but not all of the pages had been provided to Emeritus when Benthin was admitted. The court asked Emeritus's attorney if she needed time to conduct discovery on the issue, and counsel requested that the hearing be continued, "if necessary," so Emeritus could depose Root and have her "produce the durable power of attorney." The court acknowledged that it "would be extremely important to the court to know" whether the power of attorney was valid. When asked about Emeritus's request for additional time to conduct discovery, respondents' attorney stated, "That would be fine," but claimed there were other issues that compelled denial of Emeritus's petition. The court took the matter under submission.[1]

By written order filed on February 23, 2012, Emeritus's petition was denied. The court found that Emeritus failed to establish the existence of an arbitration agreement, because the power of attorney form was neither notarized nor acknowledged by

---

[1]     At the hearing on the petition, the court asked respondents' attorney, "What do you know or not know about the completeness of the Durable Power of Attorney that is out there right now?"  Respondents' attorney replied:  "What I do know—and there's two issues here, if I may.  One is, it's their burden of proof.  It's—they provided the arbitration agreement, along with the admission documents.  Those were provided to me before they were attached to their petition and did not have a Durable Power of Attorney. [¶] Second is I don't have any outside information that there is a Durable Power of Attorney.  This argument and this petition, it is *all made within the framework of their moving papers*."  (Italics added.)

witnesses. (Citing Prob. Code, §§ 4401, 4402, 4121.) The court also rejected Emeritus's argument that Root signed the Arbitration Agreement as Benthin's ostensible agent.

### D. Emeritus's First Appeal

Emeritus appealed from the court's denial of the petition to compel arbitration (A134748). In May 2013, we filed an unpublished opinion affirming the order. We held the trial court did not err in concluding that the powers of attorney were invalid and provided no basis for enforcing the Arbitration Agreement, since the copies attached to Emeritus's papers were not notarized or acknowledged by two witnesses. We also held that the court did not err in ruling Root was not Benthin's ostensible agent when she signed the Arbitration Agreement.

In addition, we held that the court did not err in declining to grant the continuance Emeritus requested orally at the hearing. We explained: "Emeritus was the party that had filed the petition to compel arbitration based on an arbitration agreement that, on its face, could not be enforced unless the signatory had authority to sign it on Benthin's behalf. Before even filing the motion, therefore, Emeritus should have considered whether the powers of attorney it was relying upon were valid—namely, whether they were acknowledged by witnesses or notarized. Upon finding that the powers of attorney in Emeritus's own files had no witness signatures or notarization, Emeritus could have sought leave to conduct its requested discovery before filing its motion to compel arbitration—or at least within the four months between the time it filed its petition and the hearing."

We then addressed Emeritus's arguments on this issue, many of which Emeritus repeats in this appeal. "Emeritus points out that unilaterally conducting discovery on the *merits* before the hearing might have waived Emeritus' right to arbitrate. But surely no waiver could have been implied if Emeritus had obtained court permission to conduct discovery limited to the issue of the validity of the powers of attorney in connection with the existence and enforceability of the Arbitration Agreement: obviously if a court can continue the hearing to allow a party to engage in such limited discovery (as Emeritus

4

requests), it can also permit such discovery *before* the hearing without a waiver of arbitration resulting. It was not an abuse of discretion for the court to deny Emeritus' request for a continuance on the ground that its delay in seeking discovery was unjustified and unreasonable. [¶] . . . [¶] Emeritus also contends there was adequate reason to continue the hearing because it sees a good chance that discovery will indeed reveal a valid power of attorney. In particular, Emeritus argues, a notary page might well exist because Benthin signed the healthcare directive (which included a power of attorney for healthcare) under the written instruction to '[s]ign the document in the presence of the witnesses or the Notary.' Emeritus also notes that respondents did not submit a declaration averring that the powers of attorney were *not* notarized or acknowledged by witnesses. The fact remains, however, that no matter how fruitful Emeritus might think the discovery will be, Emeritus had plenty of time to seek it before the hearing on the petition. Emeritus has not shown that the trial court was irrational or arbitrary in declining to continue the hearing. [Fn. omitted.]"

We concluded: "In the final analysis, the trial court did not abuse its discretion in failing to order a continuance of the hearing to allow Emeritus discovery on the validity of the powers of attorney. As respondents' attorney indicated at the hearing on Emeritus' petition, the issue before the court was whether the documents Emeritus had presented in support of its petition were sufficient to establish a valid power of attorney, not whether the powers of attorney were, in fact, notarized or signed by the requisite witnesses and thus valid."

E. <u>Post-Appeal Discovery Disclosing a Valid Power of Attorney</u>

After we issued our opinion in the prior appeal, Emeritus propounded its initial written discovery on respondents. Following a meet and confer process, respondents provided discovery responses including, among other things, a uniform statutory form power of attorney that *was* notarized. Root also admitted she held a uniform statutory form power of attorney, but she denied holding a valid California advance health care directive because it was not duly acknowledged.

5

Emeritus asked respondents to stipulate to arbitration, but received no response.

F.  Emeritus's Renewed Motion to Compel Arbitration

Emeritus thereafter filed a "Motion for Reconsideration," citing Code of Civil Procedure section 1008, subdivision (b).[2]  Despite the motion's name, the parties agree it was a renewed motion to compel arbitration (§ 1008, subd. (b)), rather than a motion for reconsideration of the court's prior ruling (§ 1008, subd. (a)).

In its motion, Emeritus asked the court to order the case to arbitration because Emeritus had finally received a copy of a power of attorney that included a notarization, this valid power of attorney constituted a new fact and circumstance, and Emeritus was reasonably diligent in obtaining this discovery.[3]  Respondents argued that Emeritus had not been diligent, because it could have conducted discovery before the hearing on the original petition to compel arbitration.

G.  Denial of Emeritus's Renewed Motion

After a hearing, the court denied Emeritus's renewed motion by written order filed on January 22, 2014.  The court found:  "Defendants [Emeritus] have not established that, in the exercise of reasonable diligence, they could not have obtained a copy of the valid durable power of attorney before the petition to compel arbitration was adjudicated.  As the moving party, the burden was on defendants to establish that Joyce Root had a valid power of attorney when she signed the arbitration agreement on behalf of Geneva Benthin.  Had defense counsel exercised reasonable diligence, she would have realized prior to receiving plaintiffs' opposition that the invalid power of attorney on which she was relying to support the petition to compel arbitration was not sufficient, and she would have taken steps to obtain a valid one.  Even after the petition was filed, the parties entered into a stipulation to conduct discovery prior to the hearing on the petition. (Declaration of Daniel Newman, paragraph 2).  Yet defense counsel conducted no

---

[2]     All statutory references hereafter are to the Code of Civil Procedure.

[3]     Emeritus also provided a copy of a letter ostensibly authored by Root to Emeritus on March 11, 2011, requesting Benthin's medical records and representing that she possessed a power of attorney to act on Benthin's behalf.

6

discovery to obtain a copy of the valid durable power of attorney from plaintiffs during this time."

### H. Emeritus's Motion to Recall the Remittitur in This Court

Emeritus next turned to this court and filed a motion asking us to recall the remittitur in the first appeal (A134748), contending the decision was brought about by a misrepresentation of facts, mistake or inadvertence. We denied the motion.

### I. Emeritus's Current Proceedings in This Court

Claiming uncertainty as to whether an order denying a renewed motion to compel arbitration is an appealable order, Emeritus pursued both a petition for writ of mandate in this court (A141370) and the instant appeal. We issued an order deferring further action on the writ petition pending the appeal's resolution.

## II. DISCUSSION

Emeritus contends the trial court erred in denying its renewed motion to compel arbitration. Respondents disagree and contend the order denying Emeritus's motion is not appealable. We address the last issue first.

### A. Appealability

An order denying an original petition to compel arbitration is immediately appealable. (§ 1294, subd. (a).) An order denying a motion for *reconsideration* of a prior ruling under section 1008, *subdivision (a)*, is not appealable. (§ 1008, subd. (g).) The parties debate the appealability of an order denying a *renewed* motion under section 1008, *subdivision (b)*.[4]

The only published decision to address the issue held that a renewed motion under section 1008, subdivision (b) is not appealable. (*Tate v. Wilburn* (2010) 184 Cal.App.4th

---

[4]     Section 1008, subdivision (b) states in part: "A party who originally made an application for an order which was refused in whole or in part . . . may make a subsequent application for the same order upon new or different facts, circumstances, or law, in which case it shall be shown by affidavit what application was made before, when and to what judge, what order or decisions were made, and what new or different facts, circumstances, or law are claimed to be shown."

150, 152, 156, 159-160 (*Tate*).)  Emeritus urges us not to follow *Tate*, contending among other things that *Tate* is distinguishable because it dealt with a renewed motion to set aside a child support order, while this case involves a renewed motion to compel arbitration, which implicates the public policy in favor of arbitration agreements.  We conclude the order in this case is not appealable.

We further conclude, however, that under the circumstances we should exercise our discretion to treat the appeal as a writ petition and reach the merits.  (See *Tate, supra*, 184 Cal.App.4th at p. 160, fn. 10; *Phillips v. Sprint PCS* (2012) 209 Cal.App.4th 758, 768 ["In the interest of justice and to avoid unnecessary delay, we will treat the appeal as a petition for a writ of mandate and proceed on that basis"].)  Because we reach the merits in this proceeding, we will dismiss the pending writ proceeding (A141370) as moot.

B.  <u>Denial of Renewed Motion for Lack of Reasonable Diligence</u>

A party filing a renewed motion under section 1008, subdivision (b) must show (1) new or different facts, circumstances, or law, and (2) "a satisfactory explanation for the previous failure to present the allegedly new or different evidence or legal authority offered in the second application."  (*Kerns v. CSE Ins. Group* (2003) 106 Cal.App.4th 368, 383; *Thompson v. Superior Court* (1972) 26 Cal.App.3d 300, 310.)

In the matter before us, the purported "new" fact was that the power of attorney was valid because there was, indeed, a notarization.  The issue, therefore, was whether Emeritus provided a satisfactory explanation for failing to present the notarized copy in connection with its original petition to compel arbitration.  (See *Garcia v. Hejmadi* (1997) 58 Cal.App.4th 674, 690 [requirement of a satisfactory explanation is synonymous with "a strict requirement of diligence"].)

The court did not err in concluding Emeritus could have obtained a valid copy of the power of attorney earlier with the exercise of reasonable diligence.  The papers in Emeritus's possession, when it filed its initial petition to compel arbitration, did not include the notarization or witness acknowledgment necessary for the power of attorney

8

to be valid. From this, Emeritus knew or should have known that the documents it would be able to attach to its petition would not suffice to establish a binding arbitration agreement. There was no showing that Emeritus could not have obtained a stipulation or order of discovery on this limited issue before filing the petition. Furthermore, the parties stipulated to conduct discovery six days after the petition was filed, without prejudice to Emeritus's pursuit of arbitration, giving Emeritus about four months before the hearing to obtain discovery of the valid power of attorney. Moreover, respondents' opposition to the petition, served about two weeks before the hearing, asserted that the papers attached to the petition did not demonstrate a valid power of attorney, leaving Emeritus nearly two weeks before the hearing to attempt expedited discovery and cure the defect. Under the circumstances, it was not an abuse of discretion to conclude that Emeritus failed to exercise reasonable diligence in obtaining a complete copy of a valid power of attorney.

Emeritus's arguments to the contrary lack merit. It claims the notarized power of attorney could not have been discovered before filing its petition to compel arbitration because "Emeritus had no reason to doubt the validity of the powers of attorney." In particular, Emeritus contends Root represented that she held valid powers of attorney to act on her mother's behalf when she obtained Benthin's admission to Emeritus's facility, checked the box on the Resident Agreement, and requested Benthin's medical records. Furthermore, respondents' attorney did not contend there was no valid power of attorney when asked to stipulate to arbitration.

But Emeritus's understanding that there *was* a valid power of attorney did not diminish its obvious need to obtain a complete copy of it before seeking to compel arbitration, rather than relying on papers that lacked the requisite notarization and were insufficient as a matter of law. As we stated in our earlier opinion: "Finally, Emeritus argues that it reasonably believed that a notary page existed because Benthin signed the health care power of attorney under the instruction, 'Sign the document in the presence of the witnesses or the Notary.' . . . If Emeritus did indeed look at that language, it would have been naturally led to inquire, 'so where are the witnesses' signatures or notarization'?"

9

On a slightly different tack, Emeritus argues in its reply brief that it had no reason to take discovery because it could not have anticipated respondents *taking the position* that the powers of attorney were invalid, and when respondents finally did so, there was not enough time to conduct discovery.

Again, we must disagree. In the first place, whether or not Emeritus thought plaintiffs would object to the insufficiency of the documents on which Emeritus was relying, Emeritus certainly knew or should have known that the documents did not meet the requisites of the statute. Moreover, Emeritus became keenly aware of respondents' objection when it received their opposition papers, about two weeks (or, as Emeritus calls it, nine *court* days) before the hearing. At that point, Emeritus still had time to move for a continuance of the hearing or an order shortening time for discovery, or even to serve a deposition notice. (See § 2025.270, subd. (a) [oral deposition may be scheduled on 10 calendar days' notice].)

Emeritus's reliance on *Film Packages, Inc. v. Brandywine Film Productions, Ltd.* (1987) 193 Cal.App.3d 824 (*Film Packages*) is accordingly misplaced. There, the Court of Appeal held that the trial court did not err in granting the plaintiff's renewed motion for a right to attach order, in light of depositions taken after the previous attachment hearings, since the trial court found that the depositions "shed new light on the case." (*Id*. at p. 829.) The appellate court declined to find that the information uncovered in these depositions could have been obtained earlier, because there is often no reasonable opportunity in *attachment* proceedings to undertake the meaningful discovery that can occur later. (*Id*. at pp. 829-830.) But *Film Packages* is distinguishable for two reasons. First, the matter before us is not an attachment proceeding; indeed, Emeritus had months to conduct discovery before the hearing on its petition to compel. Second, *Film Packages*

10

merely held that the trial court did not err in its ruling; by no means did it hold that a trial court would necessarily abuse its discretion if it reached a contrary conclusion.[5]

Emeritus further contends it did not conduct discovery because it "had concerns about waiving its right to compel arbitration." We rejected this argument in Emeritus's prior appeal, when we stated "surely no waiver could have been implied if Emeritus had obtained court permission to conduct discovery limited to the issue of the validity of the powers of attorney in connection with the existence and enforceability of the Arbitration Agreement: obviously if a court can continue the hearing to allow a party to engage in such limited discovery (as Emeritus requests), it can also permit such discovery before the hearing without a waiver of arbitration resulting." Moreover, just six days after Emeritus's initial petition was filed, the parties stipulated to conduct discovery and plaintiffs agreed that Emeritus's participation in discovery would *not* constitute a waiver of its right to compel arbitration.

Lastly, Emeritus argues that respondents should not be allowed to escape their agreement to arbitrate based on "the technical argument that the defense has the burden of producing a complete copy of the power of attorney with its petition to compel arbitration, and Emeritus failed to do so." But the requirement that Emeritus demonstrate the existence of a binding arbitration agreement (and therefore, in this case, a valid power of attorney) is not a mere technicality; it is what the Legislature has required before a court strips a party of its right to trial. (§ 1281.2.) And while the law does not honor

---

[5]     The other cases on which Emeritus relies are plainly inapposite. In *Graham v. Hansen* (1982) 128 Cal.App.3d 965 (*Graham*), facts obtained after the denial of an initial summary judgment motion were held sufficient to support the granting of a renewed summary judgment motion under section 1008, subdivision (b). (*Id*. at pp. 969-970.) However, *Graham* did not even address the issue here—whether the moving party demonstrated sufficient diligence in discovering the new facts. In *Hollister v. Benzl* (1999) 71 Cal.App.4th 582, the trial court had authority to reconsider an order compelling arbitration, in light of documents that were produced to plaintiff after the earlier hearing, where the plaintiff had requested the documents and made a motion to compel their discovery *before* that hearing. (*Id*. at pp. 584-585.) Here, Emeritus did not propound any discovery, much less make a motion to compel, before the hearing on its petition to compel arbitration.

form over substance, neither does it require the trial court to turn a blind eye to the moving party's failure to fulfill the relevant statutory requisites.

### C. Emeritus's Equitable Estoppel Argument

Emeritus contends respondents should be equitably estopped from asserting that Emeritus failed to exercise reasonable diligence in seeking discovery regarding the validity of the powers of attorney.  The argument is unavailing.

In the first place, Emeritus did not raise the issue in the trial court.  It did not argue equitable estoppel in its moving papers or in its reply memorandum in support of its renewed motion to compel arbitration; and at the hearing on the motion, Emeritus argued *judicial* estoppel, not equitable estoppel.  Emeritus cannot now complain about an issue it never asked the trial court to address.  (*Hepner v. Franchise Tax Bd.* (1997) 52 Cal.App.4th 1475, 1486.)

Second, the argument fails on the merits.  To establish equitable estoppel, Emeritus had to prove (1) respondents knew the facts; (2) respondents intended their conduct to be acted upon, or acted such that Emeritus had a right to believe the conduct was so intended; (3) Emeritus was ignorant of the facts; and (4) Emeritus relied upon respondents' conduct to its injury.  (See *Hopkins v. Kedzierski* (2014) 225 Cal.App.4th 736, 756.)

Emeritus argues that respondents "knew a valid power of attorney existed" and "represented that a valid power of attorney always existed in this case," but "Emeritus did not know and had no reason to know that the powers of attorney were invalid" and "did not realize that the powers of attorney were missing a notary page."  Emeritus further contends it "relied upon Root's representations of authority to its detriment in not pursuing discovery on the validity of the powers of attorney before the hearing on the motion to compel arbitration."

However, the fact that respondents knew a valid power of attorney existed and *represented* that a valid power of attorney existed demonstrates that their representations were *consistent* with the truth.  Certainly no estoppel arises on that basis.  Emeritus's

claim that it "did not know and had no reason to know that the powers of attorney were invalid" is confusing, since the powers of attorney were *not* invalid—it is just that the incomplete papers in Emeritus's possession did not demonstrate their validity. And if Emeritus is really claiming that it did not know the papers in its possession failed to establish a valid power of attorney, it certainly had reason to know, since the statutory prerequisites are clear. For the same reason, Emeritus's claim that it did not know the powers of attorney in its possession were missing a notary page is untenable. (*Simmons v. Ghaderi* (2008) 44 Cal.4th 570, 584-585 [equitable estoppel requires a showing that the party seeking the estoppel was actually and *permissibly* ignorant of the truth and induced to rely on the other party's representation or concealment].)

To the extent Emeritus is asserting an estoppel claim based on respondents' failure to disclose their intent to *contest* the validity of the powers of attorney, respondents never represented they would not contest a petition to compel arbitration that was based on papers that failed to establish a binding arbitration agreement. And in fact, respondents *did* contest the petition on this ground, two weeks before the hearing on the petition, when there was still time for Emeritus to do something about it.

### D. Public Policy

Emeritus urges that the arbitration agreement should be enforced in light of the public policy in favor of arbitration under the Federal Arbitration Act and California law. However, Emeritus provides no authority that this public policy precludes a trial court from denying a renewed motion to compel arbitration where, as here, the party seeking arbitration had failed to exercise reasonable diligence in proving the existence of a binding arbitration agreement.

Emeritus fails to establish error.

### III.  DISPOSITION

The appeal is dismissed. The constructive petition for writ of mandate is denied. Appellants shall bear the costs incurred by respondents in this proceeding.

13

                                    _____
                                    NEEDHAM, J.

We concur.


_____
SIMONS, Act. P. J.


_____
BRUINIERS, J.